J-S27006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.D.-M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 829 EDA 2022 |

Appeal from the Order Entered March 1, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-DP-0001561-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L.-A.D.-M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 830 EDA 2022 |

Appeal from the Decree Entered March 1, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No: CP-51-AP-0000371-2021

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 12, 2022**

S.D. ("Mother") appeals from the decree entered March 1, 2022, in the

Philadelphia County Court of Common Pleas, involuntarily terminating her

parental rights to her son, D.D.-M ("Child"), born in March 2019.[1] Mother also appeals from the March 1, 2022 order in Child's dependency case changing his permanency goal from reunification to adoption. After careful review, we affirm the termination decree and dismiss the appeal from the goal change order as moot.

We begin with an overview of the relevant facts and procedural history. The Philadelphia Department of Human Services ("DHS") filed a dependency petition with respect to then six-month-old Child on September 30, 2019. The petition alleged that DHS had been aware of the family since February 2016, and, in March 2018, DHS learned that another child of Mother, who was four-months-old, died in her care. The petition further alleged that, on July 23, 2019, DHS visited Mother's home after receiving allegations that Mother drank alcohol in excess; all her children were born with fetal alcohol syndrome; her children were often dirty; Mother had difficulty managing anger; and she was non-compliant with previous court orders. On the same date, DHS presented at Mother's residence, confirmed the disarray in the home, and, for the first time, became aware of Child.

On October 9, 2019, the court adjudicated Child dependent. In the adjudication order, the court directed Mother to the Clinical Evaluation Unit

---

[1] On March 1, 2022, the trial court also terminated the parental rights of J.M. ("Father") and any unknown putative father. J.M. did not file a notice of appeal.

("CEU") for assessment, full drug and alcohol screen, dual diagnosis screen, and three random drug and alcohol screens. At that time, Child remained with Mother, but on November 20, 2019, the court removed Child from Mother and placed him in the custody of DHS because the court found Mother non-compliant with her permanency plan. Child was placed in kinship care with his maternal aunt, and he remained there for the duration of the case. N.T., 3/1/2022, at 1.

DHS provided Mother with single case plan objectives: 1) supervised visits twice a week at the agency; 2) Mother will make herself available to DHS and inform DHS of her whereabouts; 3) complete Clinical Evaluation Unit dual-diagnosis assessments and three random drug screens, and follow any recommendations made by CEU; 4) complete Achieving Reunification Center ("ARC") services for housing, employment, and financial counseling; 5) complete a parenting capacity evaluation ("PCE"); and 6) complete a consultation or evaluations at Behavioral Health System ("BHS"). N.T., 3/1/2022, at 12; Permanency Review Order, 11/20/2019. These objectives remained the same throughout the tenure of the case. At each permanency review hearing, the trial court found Mother to be either minimally compliant or non-compliant with her objectives.

On July 9, 2021, when Child was two years old, DHS filed a petition for a goal change to adoption and another petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5),

- 3 -

(8), and (b). The trial court conducted an evidentiary hearing on March 1, 2022. Mother was represented by counsel but did not testify. DHS presented the testimony of CUA case manager Asia White. Child was represented by a guardian *ad litem*.[2]

At the close of the March 1, 2022 hearing, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) and changed Child's permanency goal to adoption. By separate decree and order entered the same date on the respective dockets, the trial court memorialized its determination. On March 29, 2022, Mother timely filed notices of appeal from the termination decree and goal change order along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On May 16, 2022, this Court consolidated Mother's appeals *sua sponte*. In lieu of an opinion pursuant to Pa.R.A.P. 1925(a), on May 4, 2022, the trial court directed this Court to its rationale for its decision articulated on the record at the close of the March 1, 2022 hearing.

On appeal, Mother presents the following issues for review:

1. Whether the trial court erred by terminating the parental rights of [M]other pursuant to Pa.C.S.A. [§] 2511(a)(1) without clear and convincing evidence of [M]other's intent

---

[2] Insomuch as Child's legal interests were incapable of ascertainment due to his young age, the court did not appoint separate legal counsel for Child. *See In re T.S.*, 192 A.3d 1080, 1092-1093 (Pa. 2018) (holding, "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act" is satisfied.).

- 4 -

to relinquish her parental claim or refusal to perform her parental duties.

2. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) without clear and convincing evidence of [M]other's present incapacity to perform parental duties.

3. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) and (8) without clear and convincing evidence to prove that reasonable efforts were made by [DHS] to provide [M]other with additional services and that the conditions that led to placement of [Child] continue to exist.

4. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(b) without clear and convincing evidence that there is no parental bond between [M]other and [C]hild and that termination would serve the best interest of [Child].

5. Whether the trial court erred by changing the permanency goal to adoption pursuant to 42 Pa.C.S.A. [§] 6351 without clear and convincing evidence that adoption is in [Child's] best interest.

6. Whether the trial court erred by changing the permanency goal to adoption pursuant to 42 Pa.C.S.A. [§] 6351 without clear and convincing evidence that reasonable efforts were made by the servicing agency to reunify [Child] with [M]other.

7. Whether the trial court erred by changing the permanency goal to adoption in contravention of the mandate of 42 Pa.C.S.A. [§] 6302 to preserve the unity of the family whenever possible.

J-S27006-22

Mother's Brief at 8.[3, 4]

We review involuntary termination decrees for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." ***In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. ***Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021).

"[A]n abuse of discretion does not result merely because the reviewing court might have reached a different conclusion" or "the facts could support an opposite result." ***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** at 826. This standard of review reflects the deference we pay to

_____

[3] The guardian *ad litem* for Child filed a brief in support of affirming the order and decree.

[4] Of note, Mother's brief does not conform to Pa.R.A.P. 124(a)(3) because the text is not double-spaced. We remind counsel of the necessity of following the Pennsylvania Rules of Appellate Procedure.

- 6 -

trial courts, who often observe the parties first-hand across multiple hearings. *S.K.L.R.*, 256 A.3d at 1123-24.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental "right to make decisions concerning the care, custody, and control" of his or her child with the "child's essential needs for a parent's care, protection, and support." *C.M.*, 255 A.3d at 358. Termination of parental rights has "significant and permanent consequences for both the parent and child." *L.A.K.*, 265 A.3d at 591. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *C.M.*, 255 A.3d at 359 (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act. "Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination." *C.M.*, 255 A.3d at 359; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). In evaluating whether the petitioner proved grounds under Section 2511(a), the trial court must focus on the parent's conduct and avoid using a "balancing or best interest approach." *Interest of L.W.*, 267 A.3d 517, 524 n.6 (Pa. Super. 2021). If the trial court determines the petitioner established grounds for termination under Section 2511(a) by clear and convincing

evidence, the court then must assess the petition under Section 2511(b), which focuses on the child's needs and welfare. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013).

The orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[5] Here, we analyze the court's termination decrees pursuant to Section 2511(a)(8) and (b), which provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> * * *
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

---

[5] In order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

23 Pa.C.S.A. § 2511(a)(8), (b).

To satisfy Section 2511(a)(8), the petitioner must show three components: (1) that the child has been removed from the care of the parent for at least 12 months; (2) that the conditions which led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. ***In re Adoption of J.N.M.***, 177 A.3d 937, 943 (Pa. Super. 2018).

Unlike other subsections, Section 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. ***In re M.A.B.***, 166 A.3d 434, 446 (Pa. Super. 2017). "[T]he relevant inquiry" regarding the second prong of Section 2511(a)(8) "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." ***In re I.J.***, 972 A.2d 5, 11 (Pa. Super. 2009). Further, the Adoption Act prohibits the court from considering, as part of the Section 2511(a)(8) analysis, "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

We observe that Sections 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the relevant child or children. However, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required

by Section 2511(b), and must be addressed separately. ***See In re C.L.G***., 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).

This Court has recognized "that the application of [Section 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [18] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

***Id***.

As referenced *supra*, this court need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b); accordingly, we need not review Mother's first or second issue. Regarding her third issue, Mother argues that there was no legal basis to terminate her parental rights pursuant to Section 2511(a)(8) because DHS did not present clear and convincing evidence. Mother's Brief at 16. Specifically, Mother contends that DHS only presented the testimony of Ms. White who did not have personal knowledge nor documentation regarding whether Mother went to CEU or engaged in mental health services. ***Id.*** According to Mother, "[t]he

presentation of undocumented hearsay testimony does not satisfy the clear and convincing standard." ***Id.***

We conclude that Mother's issue is waived. As noted in DHS's brief, to preserve a hearsay argument for appellate review, a contemporaneous objection must be made at trial. DHS Brief at 15-17. This Court has explained:

> Claims which have not been raised in the trial court may not be raised for the first time on appeal. Our Supreme Court has frequently stressed the necessity of raising claims at the earliest opportunity, . . . [to] eliminate the possibility that an appellate court will be required to expend time and energy reviewing claims on which **no trial ruling has been made**.

***Jahanshahi v. Centura Development Co., Inc.***, 816 A.2d 1179, 1189 (Pa. Super. 2003) (emphasis in original) (citation omitted).

At trial, counsel for Mother only raised one objection based on hearsay regarding a diagnostic testing report. On the basis of the objection, DHS withdrew the exhibit. N.T., 3/1/2022, at 15-16. Counsel did not raise any other hearsay objections during Ms. White's testimony. Accordingly, Mother's issue is waived.

Even if Mother did not waive this issue, her argument would still fail. Regarding the first element of Section 2511(a)(8), it is uncontradicted that Child has been in the custody of DHS since November 2019, approximately twenty-eight months at the time of the hearing. N.T., 3/1/2022, at 33.

Additionally, testimony from Ms. White, the CUA case manager, indicated that Mother has made no progress in remedying the issues that

brought Child into DHS's care in the first place. *Id.* at 19-20. Ms. White testified that visits remained supervised throughout the case, and Mother's last visit occurred on August 2, 2021. *Id.* at 13. Additionally, according to Ms. White, despite being referred to CEU, to ARC, and for a PCE, Mother never availed herself of any of these services, and she did not present for any random drug screens. *Id.* at 14, 17-18. Ms. White related that Mother did attend a BHS consultation, which referred her to therapeutic services. However, Mother did not participate in these services. *Id.* at 16-17. Overall, Ms. White testified that Mother has made no progress towards her goals. *Id.* at 18-19.

With respect to the final element of Section 2511(a)(8), Ms. White testified that she does not believe Mother and Child have a parent-child relationship because Mother does not have visits with Child and Child does not identify her as a support system. *Id.* at 21. According to the January 29, 2021 permanency review order, Mother participated in nine visits, but she missed twenty-six. Similarly, the subsequent permanency review order, dated June 2, 2021, stated that Mother is inconsistent with visitation. Furthermore, Mother's last visit with Child occurred on August 2, 2021, when Child was two years old. *Id.* at 13.

Ms. White confirmed that she does not believe Child would experience irreparable harm if Mother's rights were terminated. *Id.* at 21-22. Ms. White testified that Child is bonded with his resource parent and identifies her as his

mother. *Id.* at 22. Ms. White testified that Child calls her "mom" and she meets Child's needs. *Id.* The trial court found Ms. White's testimony "credible" and "uncontradicted." *Id.* at 51. Additionally, the trial court appropriately found that "this [C]hild does not know [his] [M]other and father." *Id.* at 51-52.

Thus, even if the issue had not been waived, the trial court was well within its discretion to terminate Mother's parental rights under Section 2511(a)(8) because Child has been removed from Mother's care far in excess of the 12-month statutory minimum; the conditions which led to Child's removal continue to exist; and termination would best serve the needs and welfare of Child.

We turn now to Section 2511(b), which requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). "The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." *T.S.M.*, 71 A.3d at 267 (citation and quotation marks omitted). Our Supreme Court has made clear that Section 2511(b) requires the trial court to consider the nature and status of bond between a parent and child. *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993). Nevertheless, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *T.S.M.*, 71 A.3d at 267. In evaluating a parent-child bond, the court does not

have to use expert testimony, and it may rely upon the testimony of social workers and caseworkers. **In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010). To the extent there is a bond, the trial court must examine whether termination of parental rights will destroy a "necessary and beneficial relationship," thereby causing a child to suffer "extreme emotional consequences." **E.M.**, 620 A.2d at 484-85.

"While a parent's emotional bond with his or her child is a major aspect of the [s]ubsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." **In re M.M.**, 106 A.3d 114, 118 (Pa. Super. 2014). "In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." **Id**. In determining needs and welfare, the court may properly consider the effect of the parent's conduct upon the child and consider "whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights." **L.W.**, 267 A.3d at 524.

Furthermore, our Supreme Court has stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." **T.S.M.**, 71 A.3d at 268. The Court directed that, in weighing the

bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id.*** at 269. The ***T.S.M.*** Court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id.***

In the instant case, Mother addresses Section 2511(b) in her fourth issue and argues that she and Child have a strong emotional bond. Mother's Brief at 17. Mother relates that she was Child's caregiver during the formative time of Child's life and that there is a "indisputable and unbreakable bond" that formed during this period and is crucial to Child's well-being. ***Id.*** Mother argues that no evidence has been offered that she cannot provide for Child or that she lacks the capacity or ability to meet Child's needs. ***Id.*** Mother states that because clear and convincing evidence was not offered at trial that termination best serves Child's interest, there are "no legal grounds to terminate [M]other's parental rights." ***Id.***

We disagree with Mother's bald assertions. As referenced *supra*, Ms. White testified that Child and Mother do not have a parent-child relationship because Mother's visitation with Child has been inconsistent and her last visit with Child occurred on August 2, 2021, when he was two years old. N.T., 3/1/2022, at 21-22. As such, Ms. White testified that she does not believe Child knows Mother. ***Id.*** Therefore, Ms. White testified that, if the court

- 15 -

terminated Mother's parental rights, Child would not experience irreparable harm. *Id.*

Ms. White also testified that Child is closely bonded to his resource parent, who is a pre-adoptive resource, and identifies her as his mother. *Id.* at 21-22. Based on Ms. White's testimony, the trial court aptly determined that "This [C]hild's entire life has been in the home of [the resource parents] . . . the best interests of this [C]hild are to change the goal . . . and to allow this [C]hild to be [adopted]." *Id.* at 51-52. The trial court found Ms. White credible and had sufficient evidence to conclude that terminating Mother's parental rights will serve Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b). Therefore, Mother's fourth issue fails.

In Mother's fifth, sixth, and seventh issues, she asserts that the trial court abused its discretion by changing Child's permanency goal to adoption. Given our disposition affirming the termination decree, Mother's issues pertaining to the goal change order are moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

Based on the foregoing, we affirm the decree terminating Mother's parental rights and dismiss as moot the order changing the permanency goal to adoption.

- 16 -

Termination decree affirmed. Appeal from goal change order dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2022